

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00572-CV

**IN THE INTEREST OF J.G.C., JR.**, C.A.C., H.C., Z.C., and J.A.C., Children

From the County Court, Jim Wells County, Texas
Trial Court No. 16-03-55745-CV
Honorable Michael Ventura Garcia, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:     Sandee Bryan Marion, Chief Justice
            Patricia O. Alvarez, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed: January 22, 2020

AFFIRMED

Appellants Juan and Dora appeal the trial court's August 6, 2019 order terminating their parental rights to their five children, J.G.C., Jr., C.A.C., H.C., Z.C., and J.A.C. In two issues, Juan and Dora challenge the sufficiency of the evidence supporting the trial court's finding that termination is in the children's best interest and argue "significant and unreasonable delays in concluding trial" violated their due process rights. We affirm the trial court's order of termination.

### Factual Background

The Texas Department of Family and Protective Services ("the Department") removed the children from Juan's and Dora's custody in 2016 based on allegations that Juan and Dora were habitually smoking synthetic marijuana and neglecting their children and that the family was living in "deplorable conditions."

The Department prepared a family service plan requiring Juan and Dora to submit to random drug screening, substance abuse assessments, counseling, and parenting and anger management classes. A Department caseworker testified that throughout the case, Juan and Dora engaged in services only "sporadically." A substance abuse counselor testified she began working with Juan in September 2016 and met him approximately four times between then and January 2017, which was "not that much, because we want to meet with them weekly." The same counselor saw Dora once in January 2017 for a psychosocial assessment. Dora was "very open and honest about her past drug use" and admitted she had used synthetic marijuana for ten years but claimed she had been clean for eight months. Despite the counselor's attempts to arrange additional sessions, she never saw Juan or Dora again after January 2017. Another counselor testified he treated Juan and Dora briefly in 2017 but was unable to reach them to arrange further sessions after September 2017. Before they stopped attending services, one counselor testified Juan and Dora had received "nowhere nearly enough" treatment to be successful in addiction recovery.

In January 2017, the Department returned the children to Juan's care on the condition that Dora would move out of Juan's house. On February 7, 2017, a Department caseworker made an unannounced home visit and found Juan and Dora outside the house. Dora was sitting on a chair with her eyes closed and her mouth open, and Juan was standing next to her with his arms stretched out in front of him. The caseworker called out to Juan and Dora, but they did not respond. When a Department supervisor and law enforcement arrived at the scene, Juan and Dora went inside the house and refused to come out.

The next day, February 8, 2017, the Department caseworker met Juan's and Dora's three school-aged children at their school, at which time the children made outcries of drug use by their parents. The caseworker then returned to Juan's house with police officers, including Alice Police Corporal Julian Cavazos. The trial court admitted a portion of Corporal Cavazos's body camera

footage from the encounter, in which Juan and Dora are visibly "inebriated." Corporal Cavazos testified he detected the odor of burnt synthetic marijuana on both Juan and Dora. Corporal Cavazos also testified the house appeared empty and dirty and not safe for children, with front and back doors that did not appear to lock properly. Two small children, who appeared "fine" and not scared, were also present at the house.

The Department removed the children for the second time, and the caseworker testified Juan and Dora had "no [further] compliance with services." Both Juan and Dora failed or refused to submit to multiple drug tests and neither completed anger management classes and counseling. While the case was pending, Juan was arrested and convicted of attempted burglary of a habitation with intent to commit aggravated assault and sentenced to incarceration for two years. At trial, Dora acknowledged she was arrested in January 2018 "because of endangerment or something" after Juan "opened the passenger door and jumped out of the vehicle" Dora was driving. Dora conceded synthetic marijuana was discovered in the vehicle. Dora also admitted to "relapsing" with synthetic marijuana in January 2019.

When the initial caseworker stopped working on the case in January 2018, she did not believe it was in the best interest of the children to be returned to Juan and Dora because the Department still had concerns regarding domestic violence and "on and off" drug use, and because the Department did not have access to the home to verify if it had electricity, running water, and beds for the children to sleep in. Further, Juan's and Dora's failure to comply with service providers meant those providers were unable to give the Department recommendations regarding whether Juan and Dora were willing and able to care safely for their children. The caseworker conceded she had no knowledge of the status of the case after January 2018.

**Procedural Background**

The trial court initially called the case for a bench trial on May 17, 2017. All parties announced "ready" except Dora, who was incarcerated at the time. The children's ad litem attorney stated he had not yet had an opportunity to visit with all the children together. The trial court stated that it would "commence the trial in earnest, and then we'll reset it to allow [Dora] to complete her service, or her ISF stay, return to court, and then we can, at that later time, have the children here so the Court can visit with them along with" the children's ad litem attorney. To "at least start the trial," the trial court permitted the Department to call as its first witness the caseworker, who identified the parties and testified the Department was seeking termination of Juan's and Dora's parental rights to all five children. At that point, the trial court recessed the trial and advised the parties it would continue the trial on a mutually agreeable date.

After the trial court granted Juan's and Dora's multiple requests for continuances, trial resumed on April 1, 2019 and continued on June 24, 2019. By order signed August 6, 2019, the trial court granted the Department's petition for termination and terminated both Juan's and Dora's parental rights to all five children. Juan and Dora appeal.

**Best Interest**

In their first issue, Juan and Dora argue the evidence is legally and factually insufficient to support the trial court's best interest finding.

**A.      Standard of review**

To terminate parental rights, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1), and (2) termination is in the best interest of the children. TEX. FAM. CODE ANN. §§ 161.001(b); 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We review the legal and factual sufficiency of the evidence using well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007,

161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE ANN. § 153.131(b)). In determining the best interest of a child, we apply the factors set forth in section 263.307 of the Family Code, as well as the non-exhaustive *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d at 371–72.

The trial court need not find evidence of each *Holley* factor in order to conclude termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). In addition, evidence that a parent has committed one of the acts or omissions listed in subsection 161.001(b)(1) also may be probative of the best interest of the child. *Id.* at 28.

## B.    Discussion

Here, although the record is silent regarding the desires of the children and the circumstances surrounding their current placements, there is substantial evidence in the record demonstrating Juan and Dora are unable to care for the children now and in the future and have failed to avail themselves of resources made available by the Department to promote the children's best interest.

First, the record contains ample evidence that Juan and Dora are unable to meet the children's present and future emotional and physical needs due to their ongoing drug use. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A parent's drug use supports a finding that termination is in the best interest of the child."). Both Juan and Dora have a history of using synthetic marijuana, including in the presence of the children. On February 8, 2017, Juan's and Dora's older children made outcries to the Department caseworker regarding their parents' drug use, and Corporal Cavazos observed Juan and Dora visibly inebriated and smelling of synthetic marijuana later that day. Two small children were present at the time. Dora admitted to a counselor that she had used synthetic marijuana for ten years and testified at trial that she had used synthetic marijuana as recently as January 2019. Neither Juan nor Dora consistently submitted to drug tests or otherwise demonstrated a willingness or ability to stay sober.

The record also amply demonstrates Juan's and Dora's inability to provide a stable home for their children. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) ("Evidence of a parent's unstable lifestyle can . . . support a factfinder's conclusion that termination is in the child's best interest."). When the Department made contact with Juan and Dora at Juan's home on February 8, 2017, the home appeared empty, dirty, and unsecure. After February 2017, the Department was unable to determine the status of Juan's and Dora's living conditions due to their noncompliance with services. In addition, both Juan and Dora were arrested and incarcerated during the pendency of the case. Dora admitted she was arrested in January 2018 following an altercation with Juan in a vehicle containing synthetic marijuana. In September 2018, Juan was convicted of a felony and sentenced to incarceration for two years. Juan was still incarcerated at the time of trial.

Finally, neither Juan nor Dora demonstrated a willingness or ability to comply with the family service plans prepared by the Department. *See id.* ("A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child."). Juan's and Dora's engagement with service providers was "sporadic" at best, and neither completed counseling or anger management classes. In addition, both Juan and Dora failed and refused to submit to multiple drug tests.

After considering all of the trial evidence in light of the statutory and *Holley* factors, we conclude there is sufficient evidence in the record supporting the trial court's best interest finding. We overrule Juan's and Dora's first issue.

### Due Process

In their second issue, Juan and Dora argue their due process rights were violated because more than twenty-five months elapsed between commencement of trial on May 17, 2017 and rendition of the final order of termination on August 6, 2019. In response, the Department argues Juan and Dora waived the issue by failing to raise it in the trial court.

Although proceedings to terminate parental rights must comply with procedural due process requirements, we do not review unpreserved procedural due process complaints. TEX. R. APP. P. 33.1; *In re B.L.D.*, 113 S.W.3d 340, 352–54 (Tex. 2003). Here, both Juan and Dora concede in their briefs: "During this case, no attorney objected to the trial being recessed and continued time after time." In fact, the trial court first continued the trial based on Dora's announcement of "not ready" on May 17, 2017, and subsequently continued the trial multiple times at Juan's and Dora's request. Neither Juan nor Dora ever objected to the delay of trial or raised any due process complaint in the trial court. Accordingly, we conclude any error is waived and overrule Juan's and Dora's second issue.

**Conclusion**

Having overruled both of Juan's and Dora's issues on appeal, we affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice